IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PANAMA CITY DIVISION


**NORMAN W. MOSS,**

      **Plaintiff,**

**vs.**                                                                          **CASE NO. 5:05CV62/SPM/AK**

**JO ANNE B. BARNHART,**
**Commissioner of Social Security**

      **Defendant.**

_____/


## REPORT AND RECOMMENDATION

This action is brought pursuant to 42 U.S.C. § 405(g) of the Social Security Act
(Act) for review of a final determination of the Commissioner of Social Security
(Commissioner) denying Plaintiff's applications for supplemental security income
benefits (SSI) filed under Title XVI of the Act.

Upon review of the record, the Court concludes that the findings of fact and
determinations of the Commissioner are supported by substantial evidence; thus, the
decision of the Commissioner should be affirmed.

A.    **PROCEDURAL HISTORY**

Plaintiff filed an application for SSI on February 5, 2002, alleging a disability
onset date of February 5, 2002, because of asthma, a hip disorder and back pain. R.
41-43. Plaintiff petitioned for a hearing before an administrative law judge (ALJ), who
conducted a hearing on June 22, 2004, R. 141-171, and entered an unfavorable

decision on September 1, 2004. R. 9-17. The Appeals Council denied Plaintiff's request for review, thus making the decision of the ALJ the final decision of the Commissioner. R. 4-6.  This action followed.

**B.    FINDINGS OF THE ALJ**

The ALJ concluded plaintiff is not disabled within the meaning of the Social Security Act. R. 12. The ALJ considered plaintiff's testimony at the hearing, the plaintiff's evaluation by Dr. Iqbal A. Farugui in September 2002, the plaintiff's treatment for a head laceration after a motor vehicle accident in May 2002, and his examination at the Washington County Health Department in April 2004. R. 12-14.

The ALJ found the plaintiff does not suffer from a severe back condition, because Dr. Farugui noted his examination revealed only minor restrictions of motion of his lumbar spine and x-rays from May 2002 showed only mild chronic skeletal changes with no evidence of acute injury or active disease. R. 14.

The ALJ did conclude the plaintiff has a severe impairment due to his history of asthma, which significantly limits his ability to do work. Id. In a subjective assessment of the plaintiff's residual functional capacity, the ALJ found the plaintiff is able to perform a full range of medium work, due to the evaluations of treating physicians and state agency medical consultants. R. 15. Therefore, the plaintiff retains the residual capacity to return to his past relevant work, and thus is not disabled. R. 16-17.

**C.    ISSUES PRESENTED**

Plaintiff argues that the ALJ did not properly consider his request for a consultative examination to evaluate his possible mental impairment and plaintiff is disabled. Doc. 13.

**No. 5:05CV62/SPM/AK**

The government responds that the plaintiff had a fair hearing and full administrative consideration, plaintiff does not allege a mental impairment on his application, and plaintiff does not have a severe mental impairment. Doc. 14.

The issue thus presented is whether the Commissioner's decision that Claimant is not disabled is supported by substantial evidence in the record and decided by proper legal standards.

**D.      STANDARD OF REVIEW**

Title 42 U.S.C. § 405(g) sets forth the standard of review for this court.  The Commissioner's decision must be affirmed if it is supported by substantial evidence and the correct legal standards have been applied.  Graham v. Apfel, 129 F.3d 1420, 1422 (11th Cir. 1997).  Findings of fact by the Commissioner which are supported by substantial evidence are conclusive. 42 U.S.C. § 405(g). Miles v. Chater, 84 F.3d 1397, 1400 (11th Cir. 1996).  "Substantial evidence" has been defined to mean "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Foote v. Chater, 67 F.3d 1553, 1560 (11th Cir. 1995) (citation omitted) (per curiam).  It is more than a scintilla, but less than a preponderance.  Bloodsworth v. Heckler, 703 F.2d 1233, 1239 (11th Cir. 1983) (citations omitted).  The court may not reweigh the evidence or substitute its judgment for that of the Commissioner.  Wolfe v. Chater, 86 F.3d 1072, 1076 (11th Cir. 1996).  It must determine only if substantial evidence supports the findings of the Commissioner.  See Bridges v. Bowen, 815 F.2d 622, 624 (11th Cir. 1987) (per curiam).  Even if substantial evidence exists which is contrary to

**No. 5:05CV62/SPM/AK**

the Commissioner's findings, where there is substantially supportive evidence of the Commissioner's findings, the court cannot overturn them. Barron v. Sullivan, 924 F.2d 227, 230 (11th Cir. 1991).  Unlike the deferential review accorded to the Commissioner's findings of fact, his conclusions of law are not presumed valid. Martin v. Sullivan, 894 F.2d 1520, 1529 (11th Cir. 1990) (citations omitted).  The Commissioner's failure to apply correct legal standards or to provide the reviewing court with an adequate basis for it to determine whether proper legal principles have been observed requires reversal.  Id. (citations omitted).

A disability is defined as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months . . . ."  42 U.S.C. § 423(d)(1)(A).  To qualify as a disability the physical or mental impairment must be so severe that claimant is not only unable to do his previous work, "but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy . . . ."  42 U.S.C. § 423(d)(2)(A).

Pursuant to 20 C.F.R. § 404.1520(a)-(f), the Commissioner analyzes a claim in five steps:

1.      Is the individual currently engaged in substantial gainful activity?

2.      Does the individual have any severe impairment?

3.      Does the individual have any severe impairments that meet or equal those listed in Appendix 1 of 20 C.F.R. Part 404?

**No. 5:05CV62/SPM/AK**

4.      Does the individual have any impairments which prevent past relevant work?

5.      Do the individual's impairments prevent any other work?

A finding of disability or no disability at any step renders further evaluation unnecessary.  Plaintiff bears the burden of establishing a severe impairment that keeps him from performing his past work.  If Plaintiff establishes that his impairment keeps him from his past work, the burden shifts to the Commissioner at step five to show the existence of other jobs in the national economy which, given Plaintiff's impairments, Plaintiff can perform.  Chester v. Bowen, 792 F.2d 129, 131 (11th Cir. 1986); MacGregor v. Bowen, 786 F.2d 1050, 1052 (11th Cir. 1986).  If the Commissioner carries this burden, Plaintiff must prove that he cannot perform the work suggested by the Commissioner.  Hale v. Bowen, 831 F.2d 1007, 1011 (11th Cir. 1987).  It is within the district court's discretion to affirm, modify, or reverse a Commissioner's final decision with or without remand. 42 U.S.C. § 405(g); Myers v. Sullivan, 916 F.2d 659, 676 (11th Cir. 1990).

## E.      SUMMARY OF CLAIMANT'S RELEVANT MEDICAL HISTORY

On November 14, 1995 the plaintiff sought treatment at Southern Bone & Joint Specialists for an injury occurring October 12, 1995 to his right knee and hip. R. 83. X-rays of the hip and pelvis were normal, he was assessed with a right rectus femoris muscle strain and recommended to perform light duties for two weeks, apply a heating pad, and take Motrin 600 mg. Id. He was seen again on November 28, 1995 and

**No. 5:05CV62/SPM/AK**

assessed as slowly improving. He then missed an appointment on December 29, 1995.

R. 82. He was seen January 11, 1996 and complained of a new pain in his left hip,

though he could not recall an injury. He was recommended to do flexibility exercises,

apply ice and take Motrin 600 mg. R. 81. His final consultation was March 13, 1996, at

which time he had full motion of the spine and both hips and was recommended to

return to full duty work. R. 80.

In September 2002, the plaintiff was evaluated by Dr. Iqbal Farugui and reported

low back pain, chest pain, pelvic pain and shortness of breath with exertion. The plaintiff

claimed that he was not able to sit, stand or walk for long periods of time, that his back

pain began after an injury years ago and his pelvic bone was fractured in 1996. R. 84.

An examination showed a regular heart rate, full range of motion except some

restrictions of his lumbar spine, and the ability to get up and down from the examination

table without difficulty. R. 85. The doctor concluded the plaintiff's back pain was likely

musculoskeletal in nature with no evidence of limitations, his chest pain was atypical

and did not seem cardiac in nature, the previously fractured pelvis presented no

limitations, and a history of smoking and asthma might contribute to the shortness of

breath. *Id.* Dr. Farugui stated that "In general, I do not find any limitations in his day-to-

day activities." R. 86.

Plaintiff was involved in a motor vehicle accident in May 2002 and treated in the

emergency room for a scalp laceration and soft tissue injury of the shoulder. R. 123. A

CT scan of his head showed no abnormality, R. 121., and lumber spine films showed

**No. 5:05CV62/SPM/AK**

mild chronic skeletal and vascular changes with slight scoliosis and no evidence of

acute injury or active disease. R. 126. Shoulder x-rays showed no evidence of acute

injury, and a chest x-ray showed chronic changes and possible chronic obstruction

pulmonary disease. R. 125, 127.

The plaintiff was seen at the Washington County Health Department in April

2004, complaining of shortness of breath. R. 139. The plaintiff stated he was diagnosed

with asthma in 1997, and he gets short of breath when exerting himself associated with

wheezing and trouble getting air. He admitted to smoking since he was 18 years old,

currently one pack a day, and denied any unusual coughs, wheezes or chest pain. A

lung examination revealed that air entry was slightly decreased bilaterally with a slight

increase in the expiratory time. The impression was of wheezing and dyspnea, tobacco

use and a history of cardiac arrhythmia with no documentation of a previous heart

pacemaker, though the plaintiff reported having one. *Id.*

A psychiatric review form completed by a clinical psychologist found that Plaintiff

had no medically determinable mental impairment.  R. 103.

**F.**   **SUMMARY OF THE ADMINISTRATIVE HEARING**

The plaintiff testified he is currently living with his brother and does not have a

job, and his education ended after the eighth grade. R. 147. He was asked about his

past work as a carpenter and mechanic, and the circumstances of his firings from each

job. R. 148-149. The plaintiff changed his protective filing date from October 12, 1995 to

February 5, 2002. R. 150. Since this latter date he said he had no continuous work, only

"odds and ends side jobs." R. 151. He had done roofing jobs, but said doing jobs in the sun made him sweat and pass out. *Id.*

Concerning his daily activities, the plaintiff said he goes grocery shopping, uses a riding mower to cut the grass, reads the newspaper, watches TV, assembles model cars, and cleans his room. R. 152-155.

The plaintiff said he could sit for about 30 minutes before his lower back begins hurting, then he has to walk around before sitting again. R. 157-158. If he walks for over 30 minutes he gets weak and has to sit down, and he can lift abut eight pounds. R. 159. He said that he was in special education classes while in school. R. 160.

When questioned by his attorney, the plaintiff said his breathing problems began "about a year ago" and symptoms included passing out and getting weak. R. 162. He said he uses inhalers for his breathing problems- one twice a day and another three times a day. R. 164. When he uses his medicine he does not have difficulty breathing or shortness of breath. R. 165. When asked if he thought he could hold an indoor job on his medicine, the plaintiff responded he could as long as there was air conditioning. R. 165-166. He said he hasn't told the Health Department about his back problems because he does not want to wear a back brace. R. 167. When he was 13 years old he got a pacemaker installed for a heart murmur. R. 167-168. He confirmed that his back and breathing problems were the only physical problems that would prevent him from working. R. 168.

**No. 5:05CV62/SPM/AK**

The plaintiff's attorney requested an evaluation of his intellect, and the ALJ stated he would review the evidence and make a decision about a post hearing psychological consultative exam. R. 169. The plaintiff said he had 18 staples put in his head after the motor vehicle accident on May 30, 2002 and returned to the hospital on June 11, 2002 to have the staples pulled out. R. 169. He also admitted to cutting back from smoking three packs of cigarettes a day to one pack per day. R. 170.

**G.    DISCUSSION**

The sole issue before the Court is whether the ALJ should have requested a psychological consultative examination to explore Plaintiff's intellectual status.  At the hearing, Plaintiff testified that he was in special education classes and had not been evaluated for his mental abilities since school.

An ALJ has a clear duty to fully and fairly develop the administrative record. Brown v. Shalala, 44 F.3d 931, 934 (11th Cir. 1995).  In carrying out this duty, an ALJ must "scrupulously and conscientiously probe into, inquire of, and explore for all relevant facts." Smith v. Schweiker, 677 F.2d 826 (11th Cir. 1982).  In all such cases, there must be a showing of prejudice before remand is warranted for further development.  Brown, 44 F.3d at 935; Kelley v. Heckler, 761 F.2d 1538, 1540 (11th Cir. 1985).  Prejudice has been found when the record has "evidentiary gaps which result in unfairness or 'clear prejudice.'" Brown, 44 F.3d at 935, *quoting* Ware v. Schweiker, 651 F.2d 408 (5th Cir. Unit A July 1981), cert. denied 455 U.S. 912.  An ALJ is not required to order medical evidence to have a complete record unless the record establishes that

**No. 5:05CV62/SPM/AK**

it is necessary to enable the ALJ to render his decision.  Holladay v. Bowen, 848 F.2d

1206 (11th Cir. 1988)(concerning the ordering of a consultative examination; Kelly, 761

F.2d at 1540 (concerning additional medical information submitted by the claimant).

     In the present case, the ALJ had substantial evidence to support his decision that

additional evidence on the issue of Plaintiff's mental status was unnecessary to his

determination.  He had a review in the record completed by a clinical psychologist who

noted no mental impairment whatsoever.  Plaintiff alleged no mental impairment in any

of his applications for disability and had worked for several years apparently without

mental problems compromising his ability to work.  The failure to allege a mental

impairment during the application process undermines the credibility of a mental

impairment.  Craig v. Apfel, 212 F.3d 433, 436 (8th Cir. 2000).  When asked at the

hearing why he was unable to work, Plaintiff's sole allegation of disability was with

regard to his back condition and shortness of breath.

     Accordingly, it is respectfully **RECOMMENDED**:

     That the decision of the Commissioner denying benefits be **AFFIRMED**.

     **At Gainesville, Florida, this** 20th **day of June, 2006.**


         **s/ A. KORNBLUM**
         **ALLAN KORNBLUM**
         **UNITED STATES MAGISTRATE JUDGE**


**No. 5:05CV62/SPM/AK**

## NOTICE TO THE PARTIES

A party may file specific, written objections to the proposed findings and recommendations within 15 days after being served with a copy of this report and recommendation. A party may respond to another party's objections within 10 days after being served with a copy thereof. Failure to file specific objections limits the scope of review of proposed factual findings and recommendations.

**No. 5:05CV62/SPM/AK**